UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                         Case No. 3:20-cr-148

        Plaintiff,

v.                                                     ORDER

David McCullough,

        Defendant.

## I. INTRODUCTION

Defendant David McCullough seeks to suppress evidence collected during a search of an apartment in which he resided. (Doc. No. 18). The government filed a brief in opposition to McCullough's motion, (Doc. No. 19), and McCullough has filed a brief in reply. (Doc. No. 22). For the reasons stated below, I deny McCullough's motion.

## II. BACKGROUND

On November 17, 2019, two men stood on the front porch and knocked on the door of an apartment located on Mulberry Street in Toledo, Ohio. At least one of them was armed with a gun. McCullough was inside the apartment, which belonged to his brother, Brian Petrak-Fennell. When someone answered the door, the men attempted to force their way inside. The person who answered the door (who later was identified as McCullough) began firing shots, first from inside the building and then outside. Both men were shot and killed, and McCullough fled.

When officers from the Toledo Police Department responded, they found one of the deceased in the street outside the house and the other on the front porch. Officers then entered the apartment to search for the suspect and any other victims. Though the chronology of events is not entirely clear from the record, Petrak-Fennell at some point refused to allow officers to enter the apartment. (*See* Doc. No. 18-2 at 2). Detective Jeff Quigley of the Toledo Police Department sought and obtained a search warrant for the premises, which resulted in the seizure of an electronic surveillance system and, from McCullough's bedroom, 14 rounds of ammunition. McCullough subsequently was indicted on one count of illegally possessing ammunition in violation of 18 U.S.C. § 922(g)(1).

### III.  ANALYSIS

McCullough contends the search warrant did not permit officers to execute it during the nighttime hours and that therefore his Fourth Amendment rights were violated, and the evidence seized during the execution of the warrant must be suppressed. (Doc. No. 18). McCullough's arguments are not persuasive.

While McCullough contends the warrant permitted officers to search only during the "day season," (Doc. No. 18 at 3; Doc. No. 18-1 at 1), the warrant itself is not so cut-and-dried. As the government points out, Quigley's affidavit, which the state court judge also signed, permits execution of the warrant during any part of the day. (Doc. No. 18-2 at 2 ("I am satisfied that there is probable cause to believe that the item(s) described previously are present in/on the premises above described . . . [and] [y]ou are hereby commanded to initiate the search . . . within three (3) days of this date, making the search in the <u>Day or Night Season</u>." (emphasis in original))). Moreover, the search warrant explicitly references to the affidavit: "[a]ttached hereto it a copy of the affidavit having been made by Detective Jeff Quigley . . . ." (Doc. No. 18-1 at 1).

2

Next, as the defendant concedes, the search warrant packet was presented to and authorized by the state court judge during the "night season." While the search warrant, (Doc. No. 18-1), states the judge's conclusion that probable cause exists to support the warrant, the warrant affidavit was essential, as the facts supporting the probable cause determination are found entirely within the attached affidavit.

This case involves a state court warrant obtained solely by state law enforcement officers. Thus, the provisions of Federal Rule of Criminal Procedure 41(c) do not apply. *See, e.g., United States v. Bennett*, 170 F.3d 632, 635-36 (6th Cir. 1999).

Under Ohio law, a warrant must be executed during the daytime unless the issuing judge finds there is reasonable cause to authorize the execution of the warrant at night. Ohio Crim. R. 41(C)(2); *see also* Ohio Rev. Code § 2933.24(A) ("The command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night, in which case a search in the night may be ordered."). A warrant that does not unequivocally authorize a nighttime search does not automatically violate Ohio law. *See, e.g., Ohio v. Coburn*, No. 1744, 1990 WL 85151, at *1 (Ohio Ct. App. May 31, 1990), *dismissed,* 563 N.E.2d 297 (Ohio 1990) ("As to Crim. R. 41(C), we find the omission of the word 'nighttime' does not rise to a violation of constitutional dimension under the facts of this case.").

Moreover, such a warrant also does not automatically violate a defendant's Fourth Amendment rights. *United States v. Searp*, 586 F.2d 1117, 1124 (6th Cir. 1978) ("[T]he particular procedures mandated before a night search may be conducted are not part of the fourth amendment, and we conclude that suppression should not automatically result from any violation of the rules.")

Nor do Ohio courts counsel the exclusion of evidence in the event a search warrant does not strictly comply with § 2933.24(A) or Criminal Rule 41(C). *Ohio v. Gipson*, 2009-Ohio-6234, 2009

3

WL 4263279, *9 (Ohio Ct. App. Nov. 30, 2009) ("Even assuming *arguendo* that a nighttime search was not warranted, we do not find this failure warrants the application of the exclusionary rule, for the same reasons we previously provided in our discussion as to the application of the exclusionary rule with 'knock-and-announce' violations."); *Ohio v. Noble*, 2020-Ohio-695, 2020 WL 973693, *7 (Ohio Ct. App. Feb. 28, 2020) (Froelich, J., concurring) ("[S]uppression is not an available remedy" for violations of Ohio law requiring reasonable cause be shown for a nighttime search.).

Much like the circumstances before the *Coburn* court, "[t]he request for the nighttime search in the affidavit and issuance of the warrant by the judge in the middle of the night indicates the omission [of the word 'nighttime' in the warrant itself] was a clerical error." *Coburn*, 1990 WL 85151 at *1. The state court judge knew shots had been fired from inside the structure, two men had been shot to death outside the home, that the building had cameras mounted on a balcony which may have recorded the incident, that detectives did not have a suspect in custody, and that one of the occupants of the property was refusing to let officers search the premises without a warrant. (Doc. No. 18-2 at 1-2). These circumstances create reasonable cause for a nighttime search, as there was a significant risk that evidence could be destroyed. The warrant affidavit expressly sought permission to search at night, and McCullough offers no basis to conclude the state court judge in fact refused to grant that permission when he authorized a search warrant that had been presented to him shortly before midnight. (*See* Doc. No. 18-4 at 2).

Lastly, even if I were to assume the warrant violated the Fourth Amendment, I conclude the officers executing it relied upon it in good faith. *Herring v. United States*, 555 U.S. 135, 145 (2009) (The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (internal quotation marks omitted)).

4

There are "four circumstances in which an officer's reliance on a subsequently invalidated warrant cannot be considered objectively reasonable:

> first, if the issuing magistrate 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;' second, if 'the issuing magistrate wholly abandoned his judicial role;' third, if the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' or in other words, where 'the warrant application was supported by [nothing] more than a "bare bones" affidavit,' and, fourth, if the 'warrant may be so facially deficient – *i.e.*, failing to particularize the place to be searched or the things to be seized.'"

*United States v. Neal*, 577 F. App'x 434, 448 (6th Cir. 2014) (quoting *United States v. Weaver*, 99 F3d 1372, 1380 (6th Cir. 1996)).

There is no evidence that the affidavit contained false information, and the fact that it contained inconsistent references for the time of execution falls far short of the requirement that it be "facially deficient."

## IV.     CONCLUSION

For these reasons, I deny McCullough's motion to suppress. (Doc. No. 18).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

5