UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:20-cr-148

        Plaintiff,

    v.  MEMORANDUM OPINION
AND ORDER

David McCullough,

        Defendant.

## I.    INTRODUCTION AND BACKGROUND

On November 17, 2019, Defendant David McCullough was staying at an apartment located on Mulberry Street in Toledo, Ohio, which belonged to his brother, Brian Petrak-Fennell. At approximately 8:24 p.m. that evening, two men, Stephen Turner and Jerry McGee, walked onto the front porch and knocked on the door.[1] Turner wore a clown mask and gloves, while McGee carried a .22 caliber pistol. (*See* Gov't Ex. 1). When McCullough opened the door, Turner and McGee tried to force their way inside. McGee pointed his gun at the doorway while Turner attempted to stop McCullough from closing the door by grasping the inside of the door frame and pushing against the door with his shoulder.

---

[1] Much of the incident was captured by video surveillance cameras located on the porch and on the outside of the second floor of the building. (*See* Gov't Ex. 1, 2, and 3).

McCullough also had a gun.  After struggling with Turner over the door for a few seconds, McCullough shot Turner, who fell backward onto the porch.  McGee ran from the porch and toward a car idling in the street.  (*See* Gov't Exs. 1 and 3). The door closed briefly before swinging back open.  McCullough then stepped out from the doorway onto the front porch and fired at McGee, before exiting the house and walking out toward the street.

As McCullough left the house, the car drove off, running a stop sign and continuing straight on Mulberry Street.[2]  (*See* Gov't Ex. 2).  McCullough ran in the same direction as the car, firing several shots behind him before turning left onto North Michigan Street.

Officers arrived on the scene approximately six minutes later.  They found Turner on the porch with a single gunshot wound to his head, and McGee in the roadway, with a gunshot wound to his lower back and another behind his right ear.  Both men died from their injuries.

McCullough eventually was arrested and charged by indictment by a Lucas County, Ohio grand jury with one count of possessing weapons while under a disability.  (Doc. No. 33 at 31); *see also* Lucas Cnty. Ct. of Common Pleas Case No. G-4801-CR-202001272-000.  That charge was dismissed after McCullough was charged by indictment by a federal grand jury with one count of illegally possessing ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (*See* Doc. No. 3).

McCullough subsequently pled guilty to the count charged in the indictment.  On November 18, 2021, I held an evidentiary hearing to determine the applicability of the sentencing cross-reference described in § 2K2.1(c)(1)(B) of the United States Sentencing Guidelines.  Following the hearing, the parties filed sentencing memoranda arguing for and against the application of the cross

---

[2]  McCullough contends the car drove by the scene at least twice after he fled the area.  (Doc. No. 36 at 3).  While the video recordings depict cars driving by on several occasions, it is difficult to clearly identify whether the cars are the same vehicle.  Therefore, I make no finding as to whether the car which accompanied Turner and McGee to 823 Mulberry in fact returned to the scene.

2

reference. (Doc. Nos. 34 and 36). The government contends I should cross-reference the Guideline offense level for murder or voluntary manslaughter, and that I should impose a two-point enhancement for obstruction of justice. McCullough argues those offense cross-references do not apply because he acted in self-defense and that his sentence should not be enhanced for obstruction of justice.

## II.  DISCUSSION

Section 2K2.1 applies to the determination of the proper base offense level to be used during the sentencing of a defendant convicted of unlawful receipt, possession, or transportation of firearms or ammunition. "If the defendant used or possessed any . . . ammunition . . . in connection with the commission or attempted commission of another offense . . . [and] death resulted," the Guidelines direct the trial judge to apply "the most analogous offense guidelines from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined [in subsections (a) or (b)]." U.S.S.G. § 2K2.1(c)(1)(B). Before applying the § 2K2.1(c)(1)(B) enhancement, "the court must find by a preponderance of the evidence all of the essential elements of the underlying offense, including the absence of any defenses." *United States v. Walker*, 858 F. App'x 857, 860 (6th Cir. 2021) (citations and internal quotation marks omitted).

The facts in the record most closely fit the offense of voluntary manslaughter. Ohio law provides: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . . ." Ohio Rev. Code § 2903.03(A).

As the government concedes, "[t]he evidence in this case clearly supports that Turner and [McGee] came to McCullough's residence to burglarize him." (Doc. No. 34 at 11). The two men expected McCullough to be home. Turner knocked on the door and they stood waiting for

3

McCullough to open it. (*See* Gov't Ex. 1, beginning at 20:24:35). Turner then tried to force his way inside while McGee pointed his gun at McCullough. There appears to be no genuine dispute that Turner and McGee engaged in serious provocation that was reasonably sufficient to incite McCullough into using deadly force.

But that is not the end of the matter. "The Ohio self-defense statute requires a showing that the defendant '(1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) did not violate any duty to retreat or avoid the danger.'" *Walker*, 858 F. App'x at 860-61 (quoting *State v. Warren*, 2020-Ohio-6990, 2020 WL 7863471, at *3 (Ohio Ct. App. Dec. 31, 2020)) (further citation omitted). The government bears the burden of disproving at least one of these three elements by a preponderance of the evidence. *Walker*, 858 F. App'x at 861; *see also* Ohio Rev. Code § 2901.05(B)(1).

Under Ohio law, "[w]hen deadly force is used in self-defense[,] there exists a duty to retreat before exercising that deadly force." *State v. Davis*, 2020-Ohio-4202, 2020 WL 5018262, at *8 (Ohio Ct. App. Aug. 25, 2020). That duty does not apply when deadly force is used against a person who is attempting to unlawfully enter a residence occupied by the person using the deadly, defensive force. Ohio Rev. Code § 2901.05(B)(2); *State v. Shine-Johnson*, 117 N.E.3d 986, 998 (Ohio Ct. App. 2018) (citation omitted). When this incident began, of course, McCullough was in his residence and Turner and McGee were attempting to unlawfully enter that residence. Thus, the government does not suggest McCullough did not act in self-defense when he shot Turner.

It also is true the "no duty to retreat" exception extends to a porch attached to a residence. *Id.*; Ohio Rev. Code § 2901.05(D)(2)-(3). But the evidence shows McCullough fired only one shot toward McGee from his residence or porch, (Gov't Ex. 1 at 20:25:18), and McGee was shot twice. (Gov't Ex. 4 at 1-2). "The privilege to use force to repel an intruder does not permit a defendant to

4

leave the sanctuary of his home to go after an anticipated intruder." *State v. Lansberry*, 2002-Ohio-4401, 2002 WL 1972918, at *2 (Ohio Ct. App. Aug. 28, 2002) (citation and internal quotation marks omitted). The security camera recordings show McGee running from the porch, (Gov't Ex. 1 at 20:25:12), and out toward the street. (Gov't Ex. 3 at 20:25:14). The evidence establishes McGee was not in the process of attempting to enter McCullough's residence when McCullough shot him. *See State v. Moore*, 158 N.E.3d 111, 122 (Ohio Ct. App. 2020) (affirming the presumption of self-defense contained in § 2901.05(B)(1) does not apply if the victim is not in the process of entering the defendant's residence when the victim is shot).

Once McCullough left his residence, he again had a duty to retreat. *See, e.g., State v. Estelle*, 176 N.E.3d 380, 392 (Ohio Ct. App. 2021) ("[E]ven assuming that the confrontation began within Estelle's residence, because Estelle fired the fatal shots from without the confines of his residence, Estelle was not relieved of his duty to retreat."); *Shine-Johnson*, 117 N.E.3d at 998 ("Appellant has not cited cases in which, despite the definitions in [O.]R.C. 2901.05(D), the no duty to retreat exception extends to a similar factual situation to the case at hand, where, after an altercation with a cohabitant inside of the home, the defendant fires the fatal shot from the yard."). He did not do so and instead fired the fatal shot[3] at McGee after leaving the porch and entering the front yard.

I have no reason to doubt McCullough's assertion that he feared for his safety as a result of Turner and McGee's actions. (Doc. No. 36 at 9). But, once McGee fled from the porch, Ohio law did not permit McCullough to pursue him and to continue shooting at him. Further, the fact that

---

[3] Dr. Cynthia Beisser, the Deputy Coroner who performed the autopsies on Turner and McGee, testified that, while McGee could have kept moving after being shot in the back, the gunshot wound to McGee's head would have "incapacitated [him] immediately." (Doc. No. 33 at 49-50).

5

McGee fired his gun after McCullough exited his residence, (*see* Def. Ex. D)[4], does not excuse McCullough from observing his duty to retreat before using deadly force.

I conclude the government has disproven the third element of McCullough's claim of self-defense by a preponderance of the evidence. Pursuant to the cross-reference in § 2K2.1(c)(1)(B), the most analogous offense for purposes of sentencing is voluntary manslaughter and, therefore, the applicable offense level is 29.

Finally, the government also argues I should impose a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines because McCullough fled with and disposed of the firearm he used to shoot Turner and McGee. (Doc. No. 34 at 14-15). The Guidelines provide for a two-level increase:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1.

There is no dispute McCullough took the gun with him as he left the area of the shooting. But even if this action could be considered obstructive, "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline [only] if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.*, n.1. There is no evidence that McCullough's conduct was purposefully calculated or likely to thwart the investigation or prosecution of the illegal possession of ammunition in violation of § 922(g)(1) and 924(a)(2). Therefore, I conclude the obstruction of justice enhancement does not apply.

---

[4] This exhibit is a photograph depicting a shell casing found in the road near McGee's body. While the video recordings do not capture McGee firing his weapon, the surrounding circumstances support the inference that McGee shot at McCullough.

### III. CONCLUSION

For the reasons stated above, I conclude the applicable offense level is 29, pursuant to § 2K2.1(c)(1)(B) and § 2A1.3. I also conclude the obstruction of justice enhancement does not apply.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge